# EXHIBIT 1

*CJ-2015-6466*
*Andrews*

*1031599799*

IN THE DISTRICT COURT FOR OKLAHOMA COUNTY
STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

NOV 25 2015

TIM RHODES
COURT CLERK

37

| | |
|---|---|
| JOANN CANDY HARRIS and BENJAMIN HARRIS, | ) |
| PLAINTIFFS, | ) |
| | ) |
| | ) **CJ - 2015 - 6466** |
| VS. | ) |
| | ) CASE NO. |
| REMINGTON ARMS COMPANY, LLC, | ) |
| a foreign limited liability company;  and | ) |
| WAL-MART STORES EAST, LP, | ) |
| a foreign limited partnership, | ) |
| DEFENDANTS. | ) |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiffs, JOANN CANDY HARRIS and her husband BENJAMIN HARRIS, by and through their legal counsel Glenn J. Shrader, Jr. and Michael M. Blue bring this cause of action against Defendants, REMINGTON ARMS COMPANY, LLC ("Remington"); and Defendant, WAL-MART STORES EAST, LP ("Wal-Mart") and allege as follows:

## INTRODUCTION

Firearms manufacturers and distributors must produce and sell Rifles that will not fire without pulling the trigger to prevent injury and death.  This lawsuit arises from the danger and lack of safety of Remington Arms Company mass-produced Model 700 Centerfire Bolt Action Rifles because these rifles will fire without pulling the trigger.   This lawsuit is premised upon strict manufacturers' products liability, failure to warn and negligence. It seeks damages, compensatory and punitive, as a result of the injuries caused by the wrongful discharge of a patented Remington Model 700 Centerfire Bolt Action Rifle with a trigger mechanism called the

---

X-Mark Pro Control (the "Model 700 XMP rifle" or "subject rifle" or "Harris rifle") designed, manufactured, marketed, advertised and sold by the Defendants to the Plaintiff, Joann Candy Harris.

## REMINGTON ARMS COMPANY'S SHAMEFUL DESIGN AND MANUFACTURING HISTORY AND WILLFUL DISREGARD OF SAFETY

The Remington Model 700 series of bolt-action rifles have been manufactured and sold by Remington since 1962. The Remington 700's have had a "sordid" safety history. While this dismal safety history was known to safety advocates, it was generally unknown to the public and the millions of consumers who purchased and used Model 700 rifles. On October 20, 2010, CNBC televised a program, *Remington Under Fire: a CNBC Investigation*, ("report") which demonstrated that the trigger mechanism used prior to 2007 (known as the "Walker Fire Control") on the Model 700 could fire *without* pulling the trigger. The inventor of the firing mechanism, Merle "Mike" Walker, (who was 98 years old at the time of the documentary) told CNBC he had proposed a safer trigger in 1948 while the product was still in the testing stage. Walker said his 1948 safer trigger design was rejected by Remington because of the added cost, 5 ½ cents per rifle (adjusted for inflation: $0.54). Remington ignored Walker and chose to save the 5 ½ cents per rifle. Remington received thousands of customer complaints since the firing mechanism was introduced. Nearly two dozen deaths and hundreds of injuries had been attributed to inadvertent discharges of 700 series rifles. Internal Remington documents revealed Remington considered a recall of the Model 700 on multiple occasions, but chose not to recall. Remington received so many reports of accidental firings that it was forced to designate them by category as: Unintended Fire on Safety Release – "FSR;" Unintended Fire on Bolt Closure –

"FBC;" Unintended Fire on Bolt Opening – "FBO;" or Unintended Fire due to Bumping or Jarring ("Jar Off") – "JO". Although more than 5,000,000 of these rifles were injected by Remington into the market and are being used to this day, no recall was performed. Instead, in 2006, Remington changed its design to the Model 700 rifles incorporating a new, cheaper trigger mechanism called the X-Mark Pro Control ("XMP").

## JURISDICTION AND VENUE

1.      This Court has jurisdiction and venue over the subject matter of this action because: (a) the facts and circumstances giving rise to this action occurred in the State of Oklahoma, (b) the amount in controversy exceeds the jurisdictional minimum limits of this Court and (c) Defendants, REMINGTON ARMS COMPANY, LLC and WAL-MART STORES EAST, LP, may be served with process within the confines of Oklahoma County, State of Oklahoma.

## PARTIES

2.      Plaintiffs, JOANN CANDY HARRIS and her husband, BENJAMIN HARRIS, are residents of Atoka, Atoka County, Oklahoma.

3.      Defendant, REMINGTON ARMS COMPANY, LLC, ("Remington") is an entity organized under the laws of the State of Delaware which maintains its principal place of business in the State of North Carolina. At all times relevant hereto, Defendant Remington engaged in the distribution and sale of firearms and ammunition products in the State of Oklahoma. At all times material hereto, Defendant did business in the State of Oklahoma.  Defendant Remington may be served with process in Oklahoma County by serving process on its designated service agent: The Corporation Company, 1833 S.

---

Morgan Road, Oklahoma City, Oklahoma 73128.

4.     Defendant, WAL-MART STORES EAST, LP ("Wal-Mart") is an entity organized under
the laws of the State of Arkansas which maintains its principal place of business in the
State of Arkansas.  At all times relevant hereto, Defendant Wal-Mart engaged in the retail
sale of firearms throughout its stores in Oklahoma namely the Wal-Mart in Atoka,
Oklahoma which advertised marketed and sold the Remington Model 700 XMP that is
the subject rifle of this lawsuit to the Plaintiff.  Defendant may be served with process in
Oklahoma County by serving its registered service agent: The Corporation Company,
1833 S. Morgan Road, Oklahoma City, Oklahoma 73128.

## FACTS

5.     This is an action for the severe and catastrophic personal injuries suffered by Plaintiff,
Joann Candy Harris, when, on November 28, 2013, a Remington Arms Company Model
700 XMP bolt-action rifle fired without the trigger being pulled, bumped or touched,
causing her permanent and severe injuries.

6.     On November 11, 2011, Plaintiff, Joann Candy Harris, purchased a new Model 700 XMP
rifle, Serial # G6984220 (the "Harris rifle") at the Wal-Mart store in Atoka, Oklahoma.
The Plaintiff based her decision to purchase the Harris rifle on representations from
Remington and Wal-Mart that the Model 700 XMP was a superior hunting rifle and was
touted as "[t]he most accurate, most popular production rifle ever conceived"; and "[b]est
quality and value, [r]ight out of the box."  In the year 2011, 15% of Defendant
Remington's market revenues for its firearms were derived through sales at Wal-Mart

---

stores throughout the United States.

7.     On November 28, 2012, Plaintiff, Joann Candy Harris, was hunting with the Remington 700 XMP rifle, with the safety mechanism properly engaged and in the "safe" position. Even though the safety mechanism was properly engaged on the subject rifle, the rifle suddenly and without any warning discharged without the trigger being pulled, bumped or touched.   As a result of the wrongful discharge of the rifle, Plaintiff received catastrophic injuries.

8.     Long after her catastrophic injuries, in June of 2014, Plaintiff, Joann Candy Harris, received a recall letter for the subject rifle stating that Remington was recalling the Remington Model 700 rifles with the XMP trigger mechanisms because these rifles (like the Walker Trigger Assembly) could fire without a trigger pull and experience unintended discharge.   (A copy of the Recall Letter is attached hereto as **Exhibit "1"**.) Remington describes the hazard posed by its Model 700 XMP rifles as follows: "Remington has determined that some Model 700 and Model Seven rifles with XMP triggers could, under certain circumstances, **unintentionally discharge**." According to a Remington investigation, it was determined that "[s]ome XMP triggers might have excess bonding agent used in the assembly process."   Prior to the time of the filing of this Petition, Remington has publically announced it has reached an agreement as part of a class action settlement and multiple lawsuits, to replace *all* triggers in *all* Remington Model 700 rifles.  This recall agreement includes Model 700 rifles with both the Walker Fire Control and the XMP trigger mechanisms.  Over 7.85 million rifles are included in this recall agreement, making *all* Remington Model 700 rifles eligible for the

---

replacement trigger mechanisms.

9. At all times relevant herein, Remington was and is engaged in the business of designing, manufacturing, distributing, and selling firearms, including Remington Model 700 XMP bolt-action rifles.

10. At the time the Harris Rifle left the care, custody and control of the Defendant Remington, it knew and/or should have known of the defective condition of the trigger of the Model 700 XMP Rifle and, specifically, the Harris Rifle.

11. At all times relevant herein, Wal-Mart was and is engaged in the business of selling firearms, including Remington Model 700 XMP bolt action rifles.

12. At the time the Harris Rifle left the care, custody and control of Defendant Wal-Mart, it knew and/or should have known of the defective and unreasonably dangerous condition of the trigger of the Model 700 XMP Rifle and, specifically, the Harris Rifle.

13. As a result of the Model 700 XMP Rifle defective design, manufacturing and assembly techniques, many of those rifles have discharged without a trigger pull when the safety or bolt is moved as well as when jarred or bumped and the rifle fires can, and do fire when simply being handled and used in the ordinary and intended usage of the rifle.

14. On November 28, 2013, the Harris Rifle fired without anyone touching the trigger while the Plaintiff was engaged in the ordinary, intended and foreseeable use of the Harris rifle *i.e.* hunting.

15. Despite years of knowledge related to the dangerous defect of the Model 700 XMP Rifles, and prior to Plaintiff's injuries, Defendant Remington never issued an adequate warning or recall of the Model 700 XMP Rifles, and Defendant Remington continued to

falsely represent to the public that the Model 700 XMP rifle was a trusted, safe, and reliable rifle.

16.     Prior to Plaintiff's injuries, Remington had received hundreds of customer complaints as well as a video demonstrating that the Model 700 XMP would discharge without a trigger pull. (This video can be found at: https://youtu.be/Qa0cNr2_fSE. The video shows that it was released by Jimmy Dickens on December 30, 2013 and was provided to Remington. The video claims that it is "[t]he video that led to the 11 April 2014 Remington 700 recall.") Remington knew of the problems/defects when it sold the Harris Rifle.  On information and belief, Defendant Wal-Mart knew and/or should have known of the complaints, problems and defects of the Remington Model 700 XMP Rifles.

17.     On April 11, 2014, four and ½ months *after* Plaintiff's injury, Remington undertook a voluntary recall of all Model 700 XMP Rifles manufactured from May 1, 2006 to April 9, 2014. The sole reason for the recall was to correct the Unintended Fire on Safety Release – "FSR" which is the same defect that caused the Harris Rifle to malfunction on November 28, 2013.  This recall was an admission by Defendant Remington that the Model 700 XMP was not an appropriate "fix" of the Walker Trigger Assembly.

18.     The Harris rifle was defective and unreasonably dangerous due to design, manufacture and assembly defects when the rifle left Defendant Remington's control.

## CLAIMS FOR RELIEF

### Count I: Manufacturers' Products Liability - Unreasonably Dangerous Product

19.     Plaintiff re-alleges the allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

20.     Plaintiff was injured in the normal, customary and foreseeable use of the Remington Model 700 XMP rifle.

21.     Defendant Remington is the designer, manufacturer and assembler of the Harris Rifle and Defendant Wal-Mart is the distributer and seller of the Harris Rifle.

22.     The Harris Rifle was defective and unreasonably dangerous beyond the contemplation of the average user, particularly its capacity to unexpectedly discharge: [1] without the trigger being pulled; and [2] even though the safety mechanism on the rifle was properly engaged.   The rifle suffers from defects in design, manufacture, assembly, testing, inspection and warnings. The rifle did not contain adequate technologically and economically feasible safeguards, including but not limited to, an adequate safety and trigger assembly.

23.     The defective and unreasonable dangerous condition of the Harris Rifle caused the injuries and damages complained of herein.

### Count Two: Failure to Warn Under Strict Manufacturers' Product Liability and Negligence

24.     Plaintiff hereby incorporates by reference all above allegations as if fully set forth herein.

25.     At all times relevant, Defendant Remington designed, manufactured, assembled and distributed the Remington Model 700 XMP rifle and Defendant Wal-Mart is the distributer and seller of the Remington Model 700 XMP rifle.

26.     Defendants, Remington and Wal-Mart, knew, or in the exercise of ordinary care should have known, of the Remington Model 700 XMP rifle's propensity to unexpectedly discharge without pulling the trigger, yet failed to notify or warn the Plaintiff of the

propensity, either before or after her purchase of the rifle.

27.    Neither Plaintiff, nor the general public recognized the risks associated with the Remington Model 700 XMP rifle without an adequate warning.

28.    Defendants, Remington and Wal-Mart, owed Plaintiff a duty to adequately warn of the defect of the Remington Model 700 XMP rifle prior to the sale of the product to Plaintiff.

29.    There were no adequate warnings or instructions placed on the rifle or that accompanied the rifle, which were communicated to the user as to the proper manner of use of the rifle or dangers associated with the use of the rifle.

30.    Defendants, Remington and Wal-Mart, failed to exercise a post-sale duty to warn of the dangers or to modify its Remington Model 700 XMP rifle to eliminate the hazards and dangers associated with the foreseeable uses of the rifle.

31.    Defendants' failure to warn Plaintiff of the risks associated with use of the Remington Model 700 XMP rifle was a breach of the duties owed by Remington's and Wal-Mart's to Plaintiff to provide adequate warnings, both before and after the sale and purchase of the defective product, of the dangerous conditions of the product.

32.    Each of the failures to provide adequate warnings was a proximate cause of the injuries and damages to Plaintiffs.

### Count Three: Negligence and Gross Negligence

33.    Plaintiff hereby incorporates by reference all above allegations as if fully set forth herein.

34.    Defendant Remington was negligent in the design, manufacture, assembly, testing, inspection and marketing of the Remington Model 700 XMP rifle sold to Plaintiff. Remington knew, or in the exercise of ordinary care, should have known, that the

---

Remington Model 700 XMP rifle was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner it was intended to be used, and for foreseeable misuses of the rifle. Remington's negligence was a proximate cause of the occurrence in question and of Plaintiff's damages.

35.     Defendant Remington violated generally recognized and accepted industry standards in the design, manufacture and assembly of the Remington Model 700 XMP rifle.

36.     Defendant Remington had actual knowledge of the problems with the Remington Model 700 XMP rifle at the time it was sold to Plaintiff, in particular the rifle's propensity to unexpectedly discharge without pulling the trigger, such that the conduct of Remington was grossly negligent.

37.     Each of the above-mentioned acts or omissions was a proximate cause of the injuries and damages to Plaintiffs.

38.     Defendant Wal-Mart sold the Harris Rifle to the Plaintiff, Joann Candy Harris, in its' defective and unreasonably dangerous state.

39.     Wal-Mart is responsible for 15% of the Defendant Remington's market share for the sale of Remington's fire arms. Based on information and belief, Plaintiff alleges Wal-Mart knew, or in the exercise of ordinary care should have known of the sordid safety history of the Model 700 rifles and assured the safety of these weapons before selling the Harris Rifle. Based on information and belief, Plaintiff alleges Wal-Mart knew, or in the exercise of ordinary care should have known of the problems with the Remington Model 700 XMP rifle at the time it was sold to Plaintiff, in particular the rifle's propensity to unexpectedly discharge without pulling the trigger, such that the conduct of Wal-Mart

was grossly negligent.

40.   Each of the above-mentioned acts or omissions was a proximate cause of the injuries and damages to Plaintiffs.

### Count Four: Breach of Warranties

41.   Plaintiff hereby incorporates by reference all above allegations as if fully set forth herein.

42.   Defendants, Remington and Wal-Mart, breached the implied warranty of fitness and the implied warranty of merchantability.

43.   Defendants, Remington and Wal-Mart breached express warranties in that the Remington Model 700 XMP rifle was reported in advertising, literature and manuals as being safe when it was not.

44.   Each of the above-mentioned breaches of warranty was a proximate cause of the injuries and damages to Plaintiffs.

### ACTUAL AND PUNITIVE DAMAGES AGAINST DEFENDANTS

45.   Plaintiff, Joann Candy Harris's injuries include, but are not limited to, severe personal injury and permanent disfigurement of her left hand, including amputation of finger and multiple surgeries; fractured left wrist; fractured left ankle, resulting in severe pain and suffering.  These injuries are permanent, consciously painful, progressive and disfiguring, and Plaintiff seeks to recover damages for such injuries, for past and future medical bills, past and future physical and mental pain and suffering, past and future disability and disfigurement, past and future loss of enjoyment of life, and past and future loss of earnings.

46.   Plaintiff, Benjamin Harris, is the husband of Joann Candy Harris and has sustained a loss

of consortium, loss of services, love and companionship, severe injury to his marital enjoyment and the emotional and physical bonds of matrimony with his wife, Joann Candy Harris, as a result of the injuries she sustained from the Remington Model 700 XMP rifle.

47.     Defendant Remington is liable for each of the Plaintiffs' actual damages in an amount in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code and is also liable for punitive damages in an amount to be determined by the jury. Inasmuch as the Defendant Remington's conduct was willful, wanton and grossly negligent via its actual knowledge of the defective condition of the Remington Model 700 XMP rifle at the time it was sold, the unconstitutional caps on punitive damage should be lifted. To knowingly manufacture, distribute and sell rifles that will fire without pulling the trigger is a threat to us all. All of the acts committed by Defendant Remington amounted to a reckless disregard for the rights of others and were committed intentionally and with malice toward others and were life threatening to others and therefore the Plaintiffs seek to recover punitive or exemplary damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

48.     Defendant Wal-Mart is liable for each Plaintiffs' actual damages in an amount in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code because of its distribution and sale of the defective and unreasonably dangerous Remington Model 700 XMP rifle; its negligent conduct; and also because it was engaged in a Joint Enterprise for Profit with the Defendant Remington and is the actual and apparent agent of the Defendant Remington for the sale

of these rifles. The actions of Defendant Remington in the advertising, marketing and sale of Remington's firearms was ratified by the behavior of the Defendant Wal-Mart in selling and continuing to sell the Remington Model 700 XMP rifle with actual or constructive of knowledge of its defective and unreasonably dangerous condition. All of the acts committed by Defendant Wal-Mart amounted to a reckless disregard for the rights of others and were committed intentionally and with malice toward others and were life threatening to others and therefore the Plaintiffs seek to recover punitive or exemplary damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## DEMAND FOR A JURY TRIAL

Plaintiffs, Joann Candy Harris, and her husband, Benjamin Harris, hereby demand a trial by jury as to all issues so triable.

## PRAYER

WHEREFORE, Plaintiffs, Joann Candy Harris, and her husband, Benjamin Harris, respectfully request that the Court: (a) enter judgment in their favor and against Defendants, Remington and Wal-Mart for compensatory damages, both past and future pain and suffering, permanent disfigurement, physical impairment, past and future medical bills, lost past and future earnings, emotional distress and impairment to earning capacity and for Benjamin Harris's loss of consortium, (b) and enter judgment in their favor and against Defendants, Remington and Wal-Mart for punitive damages for the willful, wanton and gross neglect for human safety and reckless disregard for the lives and safety of others, including the Plaintiffs herein; and, (c) enter judgment in their favor and against Defendants, Remington and Wal-Mart for the costs of suit,

---

reasonable attorneys' fees, and interest both pre-judgment and post-judgment; and (d) enter such

other and further relief that the Court determines is just and proper.

Respectfully submitted,

Glenn J. Shrader, Jr. OBA #8215
The Shrader Firm
10205 N Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 600-6889    Fax: (405) 418-8891
Email: jack@shraderfirm.com
CO-COUNSEL FOR THE PLAINTIFFS

*AND*

Michael M. Blue  OBA #1343
BLUE LAW | THE WHITE HOUSE
900 Northeast 63rd Street
Oklahoma City, Oklahoma 73105
Phone: (405) 239-7046  Fax: (405) 418-0833
Email: BLUELAW@Cox.Net
CO-COUNSEL FOR THE PLAINTIFFS

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

# **Remington®**

## PRODUCT SAFETY WARNING AND RECALL NOTICE

 ### REMINGTON MODEL 700™ AND MODEL SEVEN™ RIFLES 

**PRODUCTS:** Remington Arms Company, LLC ("Remington") is voluntarily recalling Remington Model 700™ and Model Seven™ rifles with X-Mark Pro® ("XMP®") triggers, manufactured from May 1, 2006 to April 9, 2014.

**DESCRIPTION OF THE HAZARD:** Remington has determined that some Model 700 and Model Seven rifles with XMP triggers could, under certain circumstances, **unintentionally discharge**. A Remington investigation has determined that some XMP triggers might have excess bonding agent used in the assembly process. While Remington has the utmost confidence in the design of the XMP trigger, it is undertaking this recall in the interest of consumer safety to remove any potential excess bonding agent applied in the assembly process.

**HOW TO DETERMINE IF YOUR RIFLE IS SUBJECT TO THE RECALL:** Only Model 700 and Model Seven rifles with XMP triggers are being recalled. To determine if your rifle is subject to this recall, you should take the following steps:

I.     Find the rifle's serial number where the barrel meets the receiver. SEE GRAPHIC A
     a.  For a right-handed rifle, the serial number is located on a user's left.
     b.  For a left-handed rifle, the serial number is located on a user's right.

GRAPHIC A: HOW TO FIND YOUR SERIAL NUMBER.



Remington Arms Company, LLC  •  870 Remington Drive  •  P.O. Box 700  •  Madison, NC  27025
Phone 800-243-9700  •  www.remington.com

HARRIS V. REMINGTON ARMS          EXHIBIT "1"                    PAGE 1 OF 4

# *Remington*®

II.   Identify the serial number and provide it to Remington's recall support team, either by entering it at xmprecall.remington.com or calling 1-800-243-9700 (Prompt #3 then Prompt #1) Monday through Friday, 9 a.m. to 5 p.m. EDT. You will be informed if your rifle is affected by this recall and supported with free resources to return the rifle for inspection and specialized cleaning.

III.  You may also determine if your rifle is subject to the recall by a visual inspection.

   1) If the face of the trigger is ribbed (see Photo (1) below), your rifle does not have an XMP trigger and is NOT subject to this recall.

   2) If the face of the trigger is smooth (see Photo (2) below), your rifle has an XMP trigger and IS subject to this recall – in which case you should immediately seek further assistance at xmprecall.remington.com or by calling 1-800-243-9700 (Prompt #3 then Prompt #1) Monday through Friday, 9 a.m. to 5 p.m. EDT.

NO recall (Photo 1)                                        RECALL (Photo 2)



REMEDY/ACTION TO BE TAKEN:  **STOP USING YOUR RIFLE.**  Any unintended discharge has the potential to cause **injury or death.**  Immediately cease use of recalled rifles and return them to Remington free of charge.  Rifles will be inspected, specialty cleaned, tested, and returned as soon as possible, at no cost to you. **DO NOT** attempt to diagnose or repair recalled rifles.

Remington Arms Company, LLC  •  870 Remington Drive  •  P.O. Box 700  •  Madison, NC  27025
Phone 800-243-9700  •  www.remington.com

# *Remington.*

<u>TO PARTICIPATE IN THIS RECALL PROGRAM</u>:  For your safety, **STOP USING YOUR RIFLE** and immediately contact Remington.

To participate in the recall, please follow the instructions below:

STEP 1     Visit xmprecall.remington.com or call 1-800-243-9700 (Prompt #3 then Prompt #1) Monday through Friday, 9 a.m. to 5 p.m. EDT. You will be asked to provide your name, address, telephone number, and rifle(s) serial number.

STEP 2     Upon receipt of the information requested in Step 1, Remington will send you pre-paid shipping tags, boxes and written instructions. Remington will cover all related shipping, inspection, and cleaning charges. Please ONLY return your rifle with the designated shipping tags and boxes, as they are marked to expedite the rifle to a dedicated Remington facility.

<u>VERIFICATION OF CORRECTIVE ACTION</u>:     Upon return of your rifle, you will note a punch mark on the bolt release (see Photo 3 below).  This mark confirms your rifle has been inspected and specialty cleaned under this recall program.

Remington has also corrected the XMP trigger assembly process to eliminate this problem in rifles made after April 9, 2014.  Rifles made after April 9, 2014 will also have a punch mark on the bolt release.

Even after your rifle has been inspected and repaired under this recall program, always follow the Ten Commandments of Firearm safety, printed below, whenever you handle any firearm.

The Ten Commandments of Firearms Safety
1. *Always keep the muzzle pointed in a safe direction.*
2. Firearms should be unloaded when not actually in use.
3. Don't rely on your gun's safety.
4. Be sure of your target and what's beyond it.
5. Use proper ammunition.
6. If your gun fails to fire when the trigger is pulled, handle with care.
7. Always wear eye and ear protection when shooting.
8. Be sure the barrel is clear of obstructions before shooting.
9. Don't alter or modify your gun and have it serviced regularly.
10. Learn the mechanical and handling characteristics of the firearm you are using.

Remington Arms Company, LLC  ●  870 Remington Drive  ●  P.O. Box 700  ●  Madison, NC  27025
Phone 800-243-9700  ●  www.remington.com

HARRIS V. REMINGTON ARMS          EXHIBIT "1"                    PAGE 3 OF 4

# *Remington*®

PHOTO 3



Punch Mark

Remington is deeply sorry for this inconvenience, but we believe in safety first. It is imperative that Model 700 and Model Seven rifles subject to this recall **are not used** until they have been inspected and specialty cleaned by Remington.

The Remington team is committed to the quality and safety of its products.

Remington Arms Company, LLC  •  870 Remington Drive  •  P.O. Box 700  •  Madison, NC  27025
Phone 800-243-9700  •  www.remington.com